IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. DEEMER, | Civil Action No.   1:19-cv-380 |
| Plaintiff, | |
| v. | **ELECTRONICALLY FILED** |
| CITY OF OIL CITY, OIL CITY POLICE DEPARTMENT, OFFICER TIM KARNS, OFFICER THOMAS LAWTON and POLICE CHIEF ROBERT WENNER, | |
| Defendants. | |

## COMPLAINT

AND NOW, comes Plaintiff James M. Deemer, by and through his counsel John E. Quinn, Esquire, Tyler S. Setcavage, Esquire and Quinn Logue, LLC, and files this Complaint in Civil Action averring the following in support thereof:

## JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Moreover, this Honorable Court has jurisdiction over this lawsuit as it arises under the Laws and Constitution of the United States of America, specifically, the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

3. Venue in this Court is proper as to all Defendants pursuant to 28 U.S.C. § 1391(a)(2) and (b)(2) because the events giving rise to the claims occurred within this district.

## **PARTIES**

4.   Plaintiff James M. Deemer, is a competent adult citizen of Pennsylvania, with a last-known address at 316 Wyllis Street in Oil City, Pennsylvania 16301.

5.   Defendant City of Oil City is a municipal entity located in Venango County, Pennsylvania with a principal place of business at 21 Seneca Street #100 in Oil City, Pennsylvania 16301. At all relevant times, City of Oil City was acting by and through its duly authorized administrators, agents, and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and/or in accordance with the City of Oil City's polices, customs, practices, and procedures.

6.   Defendant Oil City Police Department is a municipal entity located in Venango County, Pennsylvania with a principal place of business at 21 Seneca Street #100 in Oil City, Pennsylvania 16301. At all relevant times, The Oil City Police Department was acting by and through its duly authorized administrators, agents, and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and/or in accordance with the Oil City Police Department's policies, customs, practices, and procedures.

7.   Defendant Officer Timothy Karns was employed as an Oil City Police officer at the times of the events described. At all relevant times, this officer acted under the color of state law. Officer Timothy Karns is being sued in his official and individual capacities.

8.   Defendant Officer Thomas Lawton was employed as an Oil City Police officer at the times of the events described. At all relevant times, this officer acted under the color of state law. Officer Thomas Lawton is being sued in his official and individual capacities.

9. Defendant Police Chief Robert Wenner was employed by the Oil City Police Department and/or Oil City at the times of the events described. At all relevant times, the Police Chief acted under the color of state law. Robert Wenner is being sued in his official and individual capacity.

## FACTUAL BACKGROUND

10. The facts herein surround an incident that occurred between James M. Deemer and Oil City Police on January 1, 2018.

11. On January 1, 2018, Plaintiff James Deemer was arrested after being brutally beaten by three individuals who were never charged for the beating.

12. The brutal beating Mr. Deemer endured caused reaggravation of a prior back injury, a severe concussion and brain damage—for which he continues to live with symptoms to date.

13. On the aforementioned date, in the early hours of the morning, (approximately 2 A.M. - 3 A.M.), Mr. Deemer awoke to his doorbell ringing.

14. As no one was at the door by the time he reached it, Plaintiff believed it was either kids playing a prank or a friend, Mr. Robbie Beers coming to visit on New Years Day.

15. After sitting on the porch for minutes following the doorbell, Plaintiff began walking up Wyllis Street with the intention of visiting Robbie Beers at 411 West 4th Street.

16. During Plaintiff's walk, an unidentified car with two men came down Wyllis Street in Plaintiff's direction. The Plaintiff moved to the sidewalk of Wyllis Street while the vehicle passed and eventually parked in front of 320 Wyllis Street near Plaintiff.

17.     The driver of the aforementioned car (Kenneth Lowrie) exited his vehicle angrily and in an intimidating fashion asked Plaintiff, "What the (expletive) are you looking at?"

18.     Plaintiff did not respond to the aforementioned query.

19.     Mr. Lowrie then asked, "Who the (expletive) are you," and "do you want your (expletive) kicked?"

20.     Not wanting to engage in either a verbal or physical confrontation, Plaintiff continued to remain silent.

21.     The passenger of the aforementioned vehicle (Jordan Ritchie) then stated, "You don't want to (expletive) with us tonight; somebody is going to get their (expletive) kicked."

22.     In the meantime, Mr. Lowrie had approached a residence in the neighborhood (322 Wyllis Street) and began pounding wildly on the door.

23.     Plaintiff knew the house to be occupied by Kait O'Brien, two small children, and Kait's boyfriend, Scotty Peterson.

24.     Plaintiff had cordially met and seen the residents of the same house in the past and actually helped Kait O'Brien's son, fix his bike.

25.     It is believed and therefore averred that Mr. Peterson had invited both Mr. Lowrie and Ritchie over to fight another individual who had gone out with Mr. Peterson's girlfriend, Kait for New Year's celebrations.

26.     It is believed and therefore averred that the man Mr. Peterson wanted both Mr. Lowrie and Ritchie to fight looked identical to Plaintiff.

27.     At the time of the incident, Plaintiff was unaware of facts in paragraphs twenty-four and twenty-five of this Compliant but became aware sometime after the incident.

28.     Given the circumstances and the apparent anger both Mr. Lowrie and Ritchie were demonstrating, Plaintiff became worried about the safety of his neighbors and their children.

29.     Plaintiff did not have his cell phone to contact police, so he continued to watch the altercation progress.

30.     The neighbor, Mr. Peterson, answered the door; more yelling and screaming among the men ensued before Mr. Peterson emerged from his house, began screaming at Plaintiff on the sidewalk, asking him "what he wanted," and seemed to forget of their prior, more neighborly interactions.

31.     Plaintiff reminded Mr. Peterson that he knew him and explained he was only trying to ensure that "everything was okay."

32.     Plaintiff alleges that Mr. Peterson was visibly intoxicated and/or under the influence of drugs; he angrily responded to Plaintiff's concern, telling Plaintiff to leave.

33.     In total, Plaintiff asked Mr. Peterson whether he was "going to be okay" three times, as it seemed Mr. Peterson had been intimidated by the men at his house.

34.     After the third query, Mr. Peterson instructed his girlfriend, Kait, to let the dog out so that it could "tear [Plaintiff] apart."

35.     The dog ran out of the house towards Plaintiff but became friendly upon reaching him. After a few seconds, the dog actually sat between Plaintiff's legs as Plaintiff pet it.

36.     This interaction with the dog enraged Mr. Peterson and as he called for his dog to come back to his side, the dog proceeded to hide from Mr. Peterson behind Plaintiff.

37.     Mr. Peterson finally caught the dog by the collar and threw it approximately fifteen feet back onto his porch.

38.     By this time, the two men from the car were making their way off of Mr. Peterson's porch towards Mr. Peterson and the Plaintiff.

39.     Plaintiff became very nervous that the men were about to attack him, so he turned around to continue his walk to Mr. Beers' residence.

40.     Upon his decision to leave the situation, Plaintiff continued his walk towards West 4th Street.

41.     As Plaintiff began crossing the street, but before he could reach the center of the road, he was grabbed around the neck by Mr. Ritiche and placed in a choke hold while beaten by all three men (Mr. Peterson, Lowrie, and Ritchie).

42.     Plaintiff's glasses were immediately knocked off and smashed.

43.     Mr. Ritchie's chokehold was so strong that he was at some point actually being lifted into the air, at which time Plaintiff was being brutally beaten about the head, neck, arms, and ribs.

44.     Eventually, Plaintiff was choked for so long and became so badly injured, that he began blacking out.

45.     In these moments, Plaintiff was fearful that he would die.

46.     While the attack continued, Plaintiff struggled to get near a car so he could slide underneath it to avoid further beating/choking. As he did this and as he began to pass

out, his wife (Lisa Deemer) entered the scene yelling, "I'm calling the police!" Lisa helped pry Jordan Ritchie off of Plaintiff.

47.   It is believed and therefore averred that the initial call to Defendant Oil City Police, came at that time from a salt/plow truck driver and/or a fact witness to the entire incident, Nancy Rodgers.

48.   Jordan Ritchie quickly fled the scene after hearing about the police being contacted.

49.   It is believed and therefore averred that Jordan Ritchie had an outstanding warrant or prior negative history with law enforcement.

50.   The surprise from Mrs. Deemer entering the scene gave Plaintiff the chance to get his right hand free during the struggle. With his free hand, Plaintiff then reached into his cargo-pocket to grab a gun he was lawfully carrying.

51.   As Mr. Peterson saw Plaintiff attempt to grab a gun, he and Plaintiff struggled over the gun until Plaintiff was finally able to break free.

52.   Shortly after breaking free from Mr. Peterson and fearing for his life, Plaintiff chambered a bullet in his gun and kept it pointed towards the ground.

53.   Plaintiff told the two remaining men (Kenneth Lowrie and Mr. Peterson) to stay away as his gun was loaded and he would use it if attacked again.

54.   Plaintiff's announcement of his intentions and fears under the circumstances conforms with proper gun training and techniques.

55.   Following this, Mr. Lowrie ran towards Mr. Peterson's residence.

56.   Plaintiff requested that an approaching salt/plow truck block the car involved until the police arrived.

- 7 -

57.     When Defendants Oil City Police arrived, Patrolman Larry Drake came to Plaintiff's aid, at which time Plaintiff informed the Patrolman that he had a firearm and allowed him to retrieve it.

58.     Shortly thereafter, Defendant Officers Karns arrived and took control of the scene, questioning Mr. Lowrie and Mr. Peterson first, but not Plaintiff, the victim of the crime.

59.     At several times, Plaintiff informed the officers about the third individual, Jordan Ritchie, who was now missing from the scene.

60.     Upon information and belief, Defendant Officer Karns had prior interactions with the Plaintiff which caused Officer Karns to despise Plaintiff.

61.     After interviewing Mr. Peterson and Lowrie, Officer Karns did not have any questions for the Plaintiff. Instead he stated that Plaintiff needed to "sit down," that Plaintiff's "policing of the neighborhood was over," and that he should "stop whispering."

62.     In fact, Plaintiffs voice had been temporarily altered from being choked for a prolonged period of time.

63.     It is believed and therefore averred that Officer Karns had a prior relationship with Peterson and/or Lowrie which caused him to skew the investigation in their favor.

64.     Upon information and belief, Officer Karns falsely reported to interviewing Plaintiff on the scene and first noticing that he smelled like alcohol, thus discrediting anything of substance that he wrote subsequent. Officer Karns's report is attached for the Court's reference as Exhibit "1."

65.    In fact, Plaintiff had had an alcoholic beverage at 7:00 P.M. the proceeding evening. At the time of Officer Karns' investigation, the time was approximately 2-3 A.M.

66.    As part of Officer Karns' investigation, he also obtained a written statement—but only from Mr. Peterson, even though several witnesses, including Plaintiff's wife are mentioned within his report.

67.    It is believed and therefore averred that the rest of Karns' report is based on his recollection of the interviews he or other Officers conducted at or near the scene.

68.    It is believed and therefore averred that Officer Karns changed or cherry-picked evidence to use to support Mr. Peterson's allegations against the Plaintiff.

69.    It is believed and therefore averred that Mr. Peterson and Mr. Lowrie lied to Officer Karns and the Oil City Police at the scene and in subsequent interviews.

70.    Upon information and belief, Officer Karns believed and memorialized a carefully concocted a story explaining that Plaintiff pulled a gun on Mr. Peterson after Mr. Peterson realized Plaintiff was looking at Mr. Lowrie's license plate—making it appear that Plaintiff was the aggressor in the aforementioned situation.

71.    The "concocted" story is undeniably false and unbelievable given the facts and circumstances of this incident and would have easily discredited had a thorough and proper police investigation taken place.

72.    Furthermore, the aforementioned story fails to articulate what Lisa Deemer, an another neighbor, and what Nancy Rodgers witnessed. (Nancy Rodgers's verified Witness Statement is attached hereto as Exhibit "2.")

73.    It is believed and therefore averred that Oil City Police Officers, including but not limited to Officer Karns, are not adequately trained to conduct proper criminal investigations and/or question witnesses.

74.    Upon information and belief, Officer Karns fabricated large portions of his incident report to support Mr. Peterson and Lowrie's version of events.

75.    Within this report, Defendant Officer Karns also falsified his conversation with Plaintiff's wife, Lisa Deemer, to match Mr. Peterson's recollection.

76.    Prior to questioning her, Officer Karns stated to Lisa Deemer that Plaintiff was going to be arrested.

77.    Upon information and belief, when Mrs. Deemer asked Officer Karns why Plaintiff was being arrested, he stated that: "[Plaintiff] is not the neighborhood cop."

78.    In Officer Karns' report of his conversation with Mrs. Deemer, it stated that Mrs. Deemer told Officer Karns that they (Mrs. Deemer and Plaintiff) had both been drinking, that Mrs. Deemer tried to end the fight she saw occurring, but Plaintiff told Mrs. Deemer to "leave."

79.    The false report by Karns also stated that Mrs. Deemer "realized she was not going to be able to get [Plaintiff] to stop." However, this was not told to Officer Karns or any Oil City Police Officers at the scene.

80.    The narrative created by Officer Karns' report clearly implies Plaintiff started the fight and leads one to assume Plaintiff was also drinking and fighting with his wife— blatant falsehoods inserted by Officer Karns to support Mr. Peterson's story.

81.    Officer Karns' report of the conversation with Lisa ends by stating, "She advised me that they were both consuming alcohol that night and that they had something to eat before bed."

82.    Again, Plaintiff had one drink the night preceding the early morning hours, around 7:00 P.M. Furthermore, there is no evidence that a toxicology report was ordered by Oil City Police from the hospital they knew was treating Plaintiff's injuries after the incident or that such a report would have indicated Plaintiff was intoxicated during the altercation.

83.    It is believed and therefore averred that all of false reporting contained herein was added by Officer Karns to discredit Plaintiff's story of the events and/or cover-up the true crimes Officer Karns knew/should have known were committed by Mr. Peterson, Lowrie, and Ritchie

84.    Upon information and belief, Officer Karns' report was blatantly false and was created to aid in the subsequent arrest of the Plaintiff, a man he despised based on his prior dealings with him.

85.    It is believed and therefore averred Officer Karns advised Lisa that Plaintiff's "first mistake was leaving his home with a gun," even though in fact, Plaintiff was a well-trained gun owner and licensed to carry a concealed weapon.

86.    It is believed and therefore averred that Plaintiff had the right to protect himself using deadly force given the circumstances.

87.    It is believed and therefore averred that Officer Karns had to tie up loose ends with his reporting of the incident because his report up to the interview of Plaintiff himself, mentioned an unaccounted-for third male (herein identified as Jordan Ritchie).

88.     Upon information and belief, to tie up this loose end, Officer Karns cherry-picked a witness, interviewing an elderly woman (Mary Dunn) who had heard the conflict outside, but had also mentioned that she was not wearing her glasses at the time of the incident.

89.     According to Karns' report, Mary Dunn never saw a third male fleeing the scene—thus, discrediting Plaintiff's story further and halting the investigation into Jordan Ritchie.

90.     However, Ms. Nancy Rodgers also witnessed the incident and called 911.

91.     Ms. Rodgers's Witness Statement states that she saw a third male flee the scene and also provided a timeline for when Plaintiff pulled out his gun—after he was beaten.

92.     Ms. Rodgers' statement directly conflicts with Officer Karns' report.

93.     Officer Karns never interviewed Mrs. Rodgers and his failure to do so evidences a strategic intent to cherry-pick witnesses to confirm his narrative.

94.     More curiously, Officer Karns' report also states Lowrie and Peterson were asked to come down to the police station to be interviewed via audio and video recording on the same date and time.

95.     Karns' report also states Peterson's interview recording "did not work" but Lowrie's interview was recorded on that date and time.

96.     It is believed and therefore averred that the aforementioned statement by Karns regarding Peterson's recorded statement is also false and/or created to hide the truth of the events.

97.     Upon information and belief, Peterson's interview was recorded at another time.

98.    It is believed and therefore averred that Peterson's interview did not organically match Karn' official report, forcing Officer Karns to reschedule the interview and counsel Peterson so that he could testify to Karns' rendition of the facts on camera.

99.    It is believed and therefore averred that Officer Karns had a personal problem with Plaintiff that caused him to falsify the incident report in another parties' favor.

100.    It is believed and therefore averred that Officer Karns had a personal relationship with one or more of the would-be defendants, thus giving rise to his failures to properly report/falsify the report of the incident.

101.    It is believed and therefore averred that Officer Karns' report and investigation was sanctioned by supervisory officials within Oil City's Police Department, namely Defendant Chief Robert Wenner.

102.    It is believed and therefore averred that Officer Karns and the Oil City Police Department do not treat lawful gun owners/carriers with the same rights afforded to those who do not own/carry guns.

103.    As a result of the crime committed by the three men (including Lowrie and Peterson) Plaintiff sustained a concussion, contusions to his head, dislocated/herniated discs in his back, fractured ribs, and loosened hardware from a prior spine surgery.

104.    Based on Officer Karns' report, Plaintiff was placed under arrest at the hospital shortly after his discharge.

105.    At that time, Plaintiff requested that the arresting Oil City Police Officer, Thomas Lawton, advise him why he was being arrested, to which the officer responded, "I don't know."

106. Plaintiff was then placed in jail, where an officer advised after a few hours that Plaintiff was being charged with; after hearing the list, Plaintiff requested that he speak to counsel.

107. It is believed and therefore averred that if Plaintiff would have been able to recover from his injuries during this time period, rather than being locked in a jail cell, he would not have had some of the long term side effects of these injuries that still persist today.

108. As a result of his arrest, Plaintiff was forced to remain in custody of Defendants for two days, unable to sleep or eat while he remained significantly injured.

109. It was at this time Plaintiff was finally able to explain his side of the story, which was already being discounted significantly by the narrative created by Officer Karns.

110. Plaintiff was charged and arraigned on seven separate crimes:

    a. Aggravated Assault;

    b. Reckless Endangerment;

    c. Simple Assault;

    d. Criminal Trespass;

    e. Disorderly Conduct;

    f. Public Drunkenness; and

    g. Terroristic Threats.

111. As a result of the charges levied, Plaintiff spent two days in the Venango County Prison before he was able to arrange for bail.

112. Plaintiff later learned the other individuals involved in the incident were not being charged.

113.    To add insult to injury, a news article was released with details of Plaintiff's arrest.

114.    As a result of that article and other articles shared on social media, some of Plaintiff's personal, familial, and business relationships grew strained/ceased to exist.

115.    Following the aforementioned incident, Defendant Oil City Police and/or Defendant officers frequently patrolled Plaintiff's residence and would often shine a spotlight into Plaintiff's home after midnight for seemingly no reason but to harass and annoy the Plaintiff.

116.    Following the aforementioned incident, Plaintiff's vehicle was continuously followed for extended periods of time by Defendant Oil City Police and/or Defendant officers.

117.    It is believed and therefore averred that Officer Karns continued to work the night shift (after midnight) and was the main perpetrator of the aforementioned harassment.

118.    As a result of the harassment described above, Plaintiff feared for his safety and the safety of his family.

119.    As a result of the harassment described above, Plaintiff felt that reporting the harassment would only lead to further conflict and being treated unfairly.

120.    As a result of the harassment described above, Plaintiff suffered and continues to suffer from embarrassment and humiliation.

121.    As a result of the harassment described above, Plaintiff chose to move from Oil City altogether causing great financial hardships.

122. It is believed and therefore averred that due to the news coverage of the incident and the nature of the charges levied against Plaintiff, even Plaintiff's new neighbors are afraid, do not trust, or will not associate with Plaintiff.

123. Plaintiff attempted to speak to the Defendant Chief of Oil City Police at various times during his criminal process to report/complain about what he believed to be going on, but never received any response or guidance.

124. As a result of the incident and charges levied and described herein, Plaintiff was forced to give up his firearms.

125. As a result of the incident and charges levied and described herein, Plaintiff was forced remove all alcohol from his home and refrain from drinking.

126. As a result of the incident and charges levied and described herein, Plaintiff was forced to subject himself to weekly urinalysis.

127. As a result of the incident and charges levied and described herein, Plaintiff's concealed carry permit was revoked.

128. As a result of the incident and charges levied and described herein, Plaintiff required special permission to take trips outside of the county.

129. Due to the aforementioned restrictions, Plaintiff was forced to miss a planned vacation to the Bahamas with his wife, Lisa.

130. At the present time, all charges have been dropped against Plaintiff and expunged from his permanent record.

131. Plaintiff has expended considerable sums in defense of the charges once levied against him and ultimately felt forced to leave the neighborhood he once called home.

132. Plaintiff and his wife have treated for depression due to the subject incidents.

133.    It is believed and therefore averred that Oil City Police Department has trained its staff to disregard the rights of individuals like Plaintiff who regularly and lawfully carry firearms.

134.    It is believed and therefore averred that Oil City Police Department has not properly trained Officer Karns to write true and complete incident reports and/or properly investigate a crime scene.

135.    It is believed and therefore averred that Oil City Police Department failed to properly screen candidates seeking employment as officers for criminal history, abuse of power, or prior incidents of misconduct.

136.    It is believed and therefore averred that Officer Karns was operating under policies and procedures established by the Defendant Chief of Oil City Police.

## COUNT I—UNLAWFUL SEIZURE IN VIOLATION OF 42 U.S.C. §1983
*(James Deemer v. Officer Timothy Karns and Officer Thomas Lawton)*

137.    Plaintiff incorporates all paragraphs within the Complaint in this Section as though completely enumerated herein.

138.    Defendants had a duty to diligently pursue their investigation of the incident.

139.    Defendants had a duty to justify each "arrest" with probable cause.

140.    Probable cause that is based on officer-falsified evidence is not proper and cannot be used to detain/seize persons such as the Plaintiff.

141.    Defendants did not interview Plaintiff at the scene of the incident.

142.    Plaintiff was arrested after poor and/or inadequate investigation(s) of the incident scene and witnesses.

143. No reasonable or fair investigation was done at the scene or shortly thereafter, as Plaintiff was arrested without being interviewed.

144. No diligent investigation was performed, because it is believed and therefore averred, at least one of Defendant Officers (Karns) had personal issues with Plaintiff.

145. The Defendant Officers simply took the other party's word for truth and justified their arrest based solely on their statements, disregarding/falsifying other witnesses accounts.

146. Officer Karns submitted a false report that materially misrepresented the statements from several witnesses, including the Plaintiff.

147. The statements relied on by Oil City Police Officers in their detention/arrest of Plaintiff were materially false.

148. It is believed and therefore averred that Officer Karns knew the statements were false and falsified his incident report to incriminate the Plaintiff.

149. Upon information and belief, Officer Thomas Lawton did not explain why he was arresting Plaintiff after Plaintiff had received medical treatment but did so only subject to Karns' orders and/or false report.

150. It is believed and therefore averred that Defendants subjected the Plaintiff to unlawful seizure as a result of not completing a proper investigation of the incident and authoring a false report.

151. Due to the conduct averred within this Complaint, Defendants breached their duties to protect the Plaintiff from being subjected to unlawful seizure, and to use probable cause under the circumstances to make an arrest.

152.    As a result of this breach, Plaintiff sustained injuries that have and will cause much pain, suffering and emotional trauma.

153.    As a result of this breach, Plaintiff has sustained economic damages.

WHEREFORE, Plaintiff James Deemer respectfully requests this Court make a declaratory judgment stating the Defendants violated his rights, award compensatory and punitive damages, fees and costs in Plaintiff's favor, together with any other relief this Court deems just and proper.

## COUNT II—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(James Deemer v. Officer Timothy Karns, Officer Thomas Lawton, and Chief Robert Wenner)*

154.    Plaintiff incorporates all paragraphs within the Complaint in this Section as though fully enumerated herein.

155.    It is believed and therefore averred that the Oil City Police Officers' conduct during the subject investigation was extreme and outrageous given that the facts within Officer Karns' report are/were materially false.

156.    It is believed and therefore averred that the Oil City Police Officers' conduct during the subject investigation was extreme and outrageous given that the purported victim of a beating was never interviewed or questioned at the scene.

157.    It is believed and therefore averred that Officer Karns' conduct in creating such falsehoods and/or failing to conduct an adequate investigation was part of an intentional and concerted effort to detain/jail Plaintiff because of prior dealings/distaste for the Plaintiff.

158.    The aforementioned jail time, subsequent punishment, and prolonged litigation used by Plaintiff to overcome the charges levied against him have caused a great deal of embarrassment, humiliation, emotional distress, and financial harm.

WHEREFORE, Plaintiff, James Deemer, respectfully requests this Court make a declaratory judgment stating the Defendants violated his rights, award compensatory and punitive damages, fees and costs in Plaintiff's favor, together with any other relief this Court deems just and proper.

## COUNT III—SUPERVISORY OFFICIAL LIABILITY
*(James Deemer v. City of Oil City, Oil City Police)*

159.    Plaintiff incorporates all paragraphs within the Complaint in this Section as though fully enumerated herein.

160.    It is believed and therefore averred, the officers involved received instruction/direction from a supervisory official and that this conduct, in part, lead to the violation of Plaintiff's rights.

161.    It is believed and therefore averred, the officers involved received instruction/direction from a supervisory official who knew or should have known such instruction would lead to violation of Plaintiff's rights.

162.    It is believed and therefore averred, the Defendants generally directed officers and the Defendant Officers *sub judice* to falsify incident reports or knew/should have known their policy or practice with regard to such would lead to falsified reports and a violation of Plaintiff's rights.

163.    It is believed and therefore averred, Defendants had actual knowledge of the Defendant Officers' violations and acquiesced in the violation and/or maintained a policy,

practice or custom which directly caused the violation with deliberate indifference to its consequences.

164. Defendants had a duty to adopt policies and practices that would not violate the rights of the public and Plaintiff.

165. Defendants had a duty to adopt policies and practices that would not create an unreasonable risk of a violation of rights.

166. Defendant Officers' violations of Plaintiff's rights were, in part a result of the Defendants failure to adopt adequate policies and practices.

167. As a result of this breach, Plaintiff sustained injuries that have and will cause much pain and suffering.

168. As a result of this breach, Plaintiff has sustained economic damages.

WHEREFORE, Plaintiff James Deemer respectfully requests this Court make a declaratory judgment stating the Defendants violated his rights, award compensatory and punitive damages, fees and costs in Plaintiff's favor, together with any other relief this Court deems just and proper.

### COUNT IV—INADEQUATE TRAINING OR SUPERVISION
*(James Deemer v. City of Oil City, Oil City Police)*

169. Plaintiff incorporates all paragraphs within the Complaint in this Section as though enumerated herein.

170. Defendants have a duty to adopt a training and supervision regime that adequately meets the needs of the public and does not result in the violation of rights.

171.    It is believed and therefore averred, Defendants' training program was inadequate to train its employees to carry out their duties and further failed to adequately supervise its employees.

172.    It is believed and therefore averred, Defendants' failure to adequately train and/or supervise amounted to deliberate indifference, because inaction resulted in a violation of Plaintiff's rights.

173.    It is believed and therefore averred, Defendants knew officers such as Defendant Officers would confront the particular situation enumerated herein.

174.    It is believed and therefore averred, the matter at hand was a matter that had a history of being mishandled.

175.    It is believed and therefore averred, the matter at hand regularly and/or frequently leads to the deprivation of rights enumerated in the United States and Pennsylvania Constitutions.

176.    It is believed and therefore averred, Defendants' failure to adequately train and/or supervise was a proximate cause of the violation of Plaintiff's rights.

177.    As a result of this breach, Plaintiff sustained injuries that have and will cause much pain and suffering.

178.    As a result of this breach, Plaintiff has sustained economic damages.

WHEREFORE, Plaintiff James Deemer respectfully requests this Court make a declaratory judgment stating the Defendants violated his rights, award compensatory and punitive damages, fees and costs in Plaintiff's favor, together with any other relief this Court deems just and proper.

## COUNT V—INADEQUATE SCREENING

*(James Deemer v. City of Oil City, Oil City Police)*

179. Plaintiff incorporates all paragraphs within the Complaint in this Section as though enumerated herein.

180. Defendants have a duty to adequately check their employees backgrounds and scrutinize their hires so that employees do not violate the rights of others.

181. It is believed and therefore averred, Defendants did not adequately check the Defendant Officers' backgrounds before they were hired.

182. It is believed and therefore averred, Defendants failure to do an adequate background check lead to the violation of Plaintiff's rights.

183. It is believed and therefore averred, Defendants knew or should have known that failure to do adequate background checks for officers such as Defendant Officers would create an unreasonable risk for violations of rights such as the one Plaintiff sustained.

184. It is believed and therefore averred, adequate scrutiny of the Defendant Officers' backgrounds would have led a reasonable policymaker to conclude that it was obvious that hiring employees like the Defendant Officers would lead to the particular type of violations Plaintiff alleges.

185. It is believed and therefore averred, Defendants adopted a policy of inadequate screening, and that this policy caused the violation of Plaintiff's rights.

186. As a result of this breach, Plaintiff sustained injuries that have and will cause much pain and suffering.

187. As a result of this breach, Plaintiff has sustained economic damages.

WHEREFORE, Plaintiff James Deemer respectfully requests this Court make a declaratory judgment stating the Defendants violated his rights, award compensatory and punitive damages, fees and costs in Plaintiff's favor, together with any other relief this Court deems just and proper.

## COUNT VI—LOSS OF CONSORTIUM
*(James Deemer v. Defendants)*

188.    Plaintiff incorporates all paragraphs within the Complaint in this Section as though fully enumerated herein.

189.    Spouses possess a liberty interest under the Due Process Clause of the Fourteenth Amendment, which entitles them to pursue happy, intimate association free from unlawful government intrusion.

190.    As previously alleged, both Defendants under the color of state law unlawfully caused government-imposed injuries to Plaintiff's wife, Lisa Deemer, that had devastating impact on their marriage, causing him a deprivation of consortium.

191.    Mrs. Deemer can no longer sleep as she suffers from debilitating PTSD, depression and anxiety, which has effectively all but eviscerated their marital relationship and placed a significant strain on Mr. Deemer who has to cope with the loss of his wife's services, society and companionship.

192.    Defendants' conduct improperly interfered with Mr. Deemer's personal right to the services, society, and companionship of his spouse, Lisa Deemer.

193.    As a direct and proximate cause of the Defendants' conduct, Plaintiff has been deprived of the services, society, and companionship of his spouse, which loss of consortium

- 24 -

denies him Due Process of Law, to which he is entitled under the Fourteenth Amendment to the United States Constitution and §1983.

194. As a direct and proximate cause of the Defendants' conduct, Plaintiff has suffered and will continue to suffer embarrassment, humiliation, severe emotional distress, loss of reputation, humiliation, serious psychological injury, pain and suffering, and financial harm, some or all of which may be permanent in nature.

WHEREFORE, Plaintiff, James Deemer, respectfully requests this Court make a declaratory judgment stating the Defendants violated his rights, award compensatory and punitive damages, fees and costs in Plaintiff's favor, together with any other relief this Court deems just and proper.

## **ATTORNEYS' FEES**

195. The preceding paragraphs are incorporated as though fully set forth herein.

196. Plaintiff was required to hire the undersigned counsel to prepare and file this lawsuit on his behalf. Pursuant to 42 U.S.C. § 1988 (b), Plaintiff requests that this Honorable Court utilize its discretion and award him a reasonable attorney fee.

197. Plaintiff was forced to spend approximately $5,000.00 in defense of the underlying charges Defendants inappropriately brought against him.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants individually, jointly, and/or in the alternative for compensatory damages, punitive damages, attorney fees and interest in an amount in excess of $75,000.00, exclusive of interests and costs, and any other such relief that the Court may deem just or fair.

- 26 -

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with the Rule 38 of the Federal Rules of Civil Procedure, a trial by jury on all issues.

Respectfully submitted,

QUINN LOGUE LLC

By:     /s/ *Tyler S. Setcavage*
Tyler S. Setcavage, Esquire
Pa. ID No. 322867
John E. Quinn, Esquire
Pa. ID No. 23268
tyler@quinnlogue.com
200 First Avenue, Third Floor
Pittsburgh, PA 15222-1512
(412) 765-3800
*Counsel for Plaintiff*

Date:  December 30, 2019