THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. DEEMER,              )<br>     Plaintiff,                     )<br>                                         )<br>vs.                                    )<br>                                         )<br>CITY OF OIL CITY, et al.,      )<br>     Defendants.                  )<br>                                         ) | C.A. No. 1:19-CV-380<br><br><br><br>RE: Motion to dismiss [17] |

## MEMORANDUM OPINION

U.S. District Judge Susan Paradise Baxter

**Introduction**

Plaintiff James M. Deemer filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. ECF No. 1. Deemer alleges that his rights under the Fourth and Fourteenth Amendments were violated. *Id*., ¶ 2. Pending before the Court is a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants City of Oil City, Oil City Police Department, Officer Tim Karns, Officer Thomas Lawton, and Police Chief Robert Wenner (collectively, "Defendants"). Deemer filed a Response in Opposition to the motion (ECF No. 38). The matter is fully briefed and is ripe for disposition.

**Standard of Review**

The standard governing the Court's resolution of a motion to dismiss is well known. *See, e.g., Larson Texts, Inc. v. O'Neil*, 2020 WL 5203617 (W.D. Pa. Sept. 1, 2020). Rule 12(b)(6) recognizes a defense based on the Plaintiff's failure to state a claim upon which relief can be granted. *Id*. at *4. When considering a Rule 12(b)(6) motion, courts "accept all factual

1

allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id*. (quotation marks and alterations omitted).

With this standard in mind, the Court now turns the factual allegations and claims as pleaded in Deemer's Complaint.

**Background and Factual Allegations**

Accepting the factual allegations of the Complaint as true, the foundation of Mr. Deemer's claims are based on an incident that took place on New Year's Day, 2018, the day he was arrested. ECF No. 1, ¶¶ 10-11. In the early morning hours that day, Mr. Deemer was awakened by his doorbell ringing. *Id*., ¶ 13. When he answered the door, no one was there. *Id*., ¶ 14. Mr. Deemer was not concerned, however, believing the interruption to the shenanigans of neighborhood children or an attempted visit from a friend. *Id*., ¶ 14. Mr. Deemer sat on his porch for a few moments and then started to walk up Wyllis Street, intending to visit that same friend

2

who lived nearby. *Id*., ¶ 15. As he was walking on Wyllis Street, a car approached from the opposite direction and Mr. Deemer stepped onto the sidewalk to avoid the vehicle. *Id*., ¶ 16. The car passed him, but stopped and the driver exited the vehicle. *Id*. ¶ 17. The driver, identified in the Complaint as Kenneth Lowrie, then proceeded to confront Mr. Deemer. *Id*. Mr. Deemer remained silent while the car's passenger, one Jordan Ritchie, exited the vehicle and also confronted the Plaintiff. *Id*., ¶ 21. The driver then went to a nearby residence (322 Wyllis Street) and began "pounding wildly on the door." *Id*., ¶ 22. Mr. Deemer was acquainted with the occupants of that residence—Kait O'Brien, her boyfriend Scotty Peterson, and O'Brien's small children. *Id*., ¶¶ 23-24.

According to the Complaint, Peterson had invited the vehicle's occupants to the address to fight another man who had gone out with O'Brien that evening. *Id*., ¶ 25. This other man had an "identical" physical resemblance to Mr. Deemer. *Id*., ¶ 26.

Mr. Deemer alleges that out of concern for Peterson and the other residents of the home, he inquired several times whether they "were going to be okay." *Id*., ¶¶ 31-32. But Peterson responded angrily and told Mr. Deemer to leave. *Id*., ¶ 32. When Mr. Deemer attempted to leave the scene, walking toward West 4th Street, he was placed in a chokehold by Ritchie and subsequently attacked by all three men. *Id*., ¶¶ 40-43. Mr. Deemer began to black out and feared for his life. *Id*., ¶¶ 44-45.

Mr. Deemer's wife, Lisa, arrived on the scene and announced that she was calling the police. *Id*., ¶ 48. Things then went from bad to worse when Mr. Deemer, who had managed to break free, grabbed a gun he was carrying in his pocket. *Id*., ¶ 50. Peterson then attempted to wrestle the gun from his hands. Mr. Deemer overpowered Peterson, and then "chambered a bullet in his gun and kept it pointed toward the ground." *Id*., ¶ 52.

Patrolman Larry Drake soon arrived and Mr. Deemer told him that he was carrying a gun. *Id*., ¶ 57. Next to arrive on the scene was Defendant Officer Karns, who questioned Lowrie and Peterson. *Id*., ¶ 58. Defendant Karns then turned his attention to Mr. Deemer, telling the Plaintiff to "sit down," that his "policing of the neighborhood was over" and that he should "stop whispering." *Id*., ¶ 61. Defendant Karns then prepared an investigatory report, the accuracy of which Mr. Deemer challenges in several respects. *See id*., ¶¶ 64-103. Based on the findings contained in Karns' report, Mr. Deemer was arrested and jailed. *Id*., ¶¶ 104, 106. He remained in custody for two days, which he alleges interfered with his recovery from undisclosed injuries. *Id*., ¶ 107.

Mr. Deemer was charged with seven offenses: aggravated assault, reckless endangerment, simple assault, criminal trespass, disorderly conduct, public drunkenness, and making terroristic threats. *Id*., ¶ 110(a)-(g). The other individuals involved in the January 1st incident were not arrested. *Id*., ¶ 112. Mr. Deemer additionally alleges that, subsequent to his arrest, he was subjected to unfavorable media coverage and continued harassment from members of the Defendant Oil City Police Department. *Id*., ¶ 115-116. The charges against him were dropped and ultimately expunged from his record. *Id*., ¶ 130. Mr. Deemer alleges that this incident caused him physical and emotional damages in the form of embarrassment, humiliation, alienation from his neighbors, depression, and pecuniary loss stemming from the cancelation of a pre-planned vacation to the Bahamas. *Id*., ¶¶ 122-131.

Mr. Deemer filed his Complaint on December 19, 2019. ECF No. 1. He raises six counts: unlawful seizure (Count I), intentional infliction of emotional distress (Count II), supervisory liability (Count III), inadequate training or supervision (Count IV), inadequate screening (Count

4

V) and loss of consortium (Count VI). He seeks monetary damages in excess of $75,000.00, as well as attorney's fees.

**Discussion and Analysis**

      Mr. Deemer's Complaint brings claims under both federal and state law. Before turning to the Defendants' arguments in favor of dismissal of those claims on the merits, they contend that the Complaint should be dismissed in its entirety as a sanction based on Mr. Deemer's alleged destruction of evidence. The Court will address that contention first.

      **Destruction of Evidence**

      Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Court will begin its analysis of the motion, however, with Defendants' argument that Mr. Deemer's Complaint should be dismissed as a sanction because he had his record expunged, which resulted in the destruction of all evidence related to the underlying dispute by the Venango County District Attorney's Office. *See* ECF No. 18, p. 6. Defendants fault Deemer for using "the state criminal court to obtain an order which directed Defendants to destroy all the evidence in the case." *Id.*, p. 8.

      This argument presents the Court with a legal conundrum. On the one hand, in order to bring a § 1983 case related to an alleged unlawful arrest, the plaintiff must establish that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid …". *Shears v. Clem-Johnston*, 2021 WL 3549333, at *5 (W.D. Pa. Aug. 11, 2021) *quoting Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Thus, in order to bring his civil rights case based on his allegedly unconstitutional arrest, Mr. Deemer must first have had his arrest record expunged. However, the expungement of criminal records can involve the destruction of

5

any evidence relating to the now defunct charge. This, of course, makes it difficult for Defendants to defend themselves against Mr. Deemer's claims. Upon closer inspection, however, Defendants' argument is disingenuous.

First, the Court rejects the Defendants' request to dismiss the Plaintiff's Complaint as a sanction. Mr. Deemer cannot be punished for pursuing the expungement of his criminal record, which he must do in order to bring a civil rights claim. *See Heck*, *supra*.

Second, in arguing Mr. Deemer's actions in having his criminal record expunged resulted in the destruction of evidence that might assist Defendants in this case, they raise an evidentiary issue more suited for later resolution, in the event Mr. Deemer's claims survive the motion to dismiss. At this stage of the litigation, Defendants have made no formal requests for discovery. It would be not only premature, but excessively harsh, to dismiss a case on this basis before discovery can demonstrate the significance, if any, of the potential loss. *See, e.g., Positran Mfg., Inc. v. Diebold, Inc*., 2003 WL 21104954, at *4 (D. Del. May 15, 2003) (denying dismissal of case prior to trial where the defendant had not established that the destroyed documents "are the only evidence available to prove its claims and adequately defend itself").

Third, Mr. Deemer himself has indicated that all of the evidence from his arrest "is still readily available in its pristine original form." ECF No. 38, p. 1. He explains:

> The Venango County District Attorney's Office electronically mailed all discovery evidence to plaintiff's counsel … [who] has assured Mr. Deemer that all evidence against Mr. Deemer is still in its pristine form as delivered to him by the Venango County District Attorney's Office.

*Id*. Additionally, the Court observes that Mr. Deemer attached both a copy of an incident report authored by Defendant Karns (*see* ECF No. 1-1) and what appears to be a witness statement (*see*

6

ECF No. 1-2) to his Complaint. Thus, it appears as if any information Defendants would need regarding the arrest would be available to them as part of the discovery process.

And finally, information concerning any relevant evidence—including written investigatory reports or arrest records—not in Mr. Deemer's possession owing to its destruction by the District Attorney's office in compliance with an expungement order, would still be discoverable through other means. The Federal Rule of Evidence provides that "[a]n original writing, recording, or photograph is required in order to prove its contents unless these rules or a federal statute provide otherwise." Fed. R. Evid. 1002. However, "[i]f a witnesses' testimony is based on [their] first-hand knowledge of an event as opposed to [their] knowledge of the document … then Rule 1002 does not apply." *See Waterloo Furniture Components Ltd., v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir. 2006); *see also* 31 Fed. Prac. & Proc. Evid. § 7183 (1st ed.). And, "an event may be proved by nondocumentary evidence, even though a written record of it was made." Fed. R. Evid. 1002, Advisory Committee Notes.

Thus, the drastic sanction of dismissing the complaint based on the alleged spoliation of evidence is unwarranted. The Court will now address the Defendants' arguments for dismissal on the merits, starting with the federal claims.

**Lack of Personal Involvement of Defendants Lawton and Wenner**

To state a claim under § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-331 (1986). "A defendant in a civil rights action must have personal involvement in the

7

alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." R*ode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) *citing Rode*. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. *See also Lahovski v. Rush Twp*., 441 F. Supp. 3d 43, 51 (M.D. Pa. 2020).

At Count I, Mr. Deemer brings a claim alleging violations of his Fourth Amendment right to be free from unreasonable searches and seizures against Defendant Lawton. ECF No. 1, ¶¶ 137-153. The allegations against this Defendant are sparsely stated. The Complaint identifies him as an employee of the Oil City Police Department (*id*., ¶ 8), as the officer who arrested Deemer at the hospital after the incident on New Year's Day (*id*., ¶ 105), and that Lawton failed to explain why he was arresting Deemer (*id*., ¶ 149). But in no way does the Complaint allege that Defendant Lawton was personally involved in his alleged constitutional violation. *See, e.g., Taylor v. Dist. Att'ys Off.*, 802 Fed. Appx 701, 706 (3d Cir.) (affirming dismissal of claim against arresting officer where complaint did not identify how officer personally violated plaintiff's constitutional rights), *cert. denied sub nom. Taylor v. Pennsylvania*, 141 S. Ct. 121 (2020).[1] Therefore, the claims against Defendant Lawton, as stated in Count I of the Complaint, will be dismissed.

Count I also attempts to state a Fourth Amendment claim against Defendant Wenner, the Oil City Chief of Police. *See* ECF No. 1, ¶¶ 137-153. Again, the Complaint's allegations against Defendant Wenner are thin. Wenner is identified as an employee of the Oil City Police

---

[1] The Complaint does allege that Defendant Lawton "did not explain why he was arresting Plaintiff after Plaintiff had received medical treatment but did so only subject to Karn's orders and/or false report." ECF No. 1, ¶ 149. There is no allegation that Lawton authored the false report or knew it to be false; instead that action in imputed to Defendant Karns. Thus, even this does not allege the personal involvement of Defendant Lawton.

8

Department, namely the Police Chief (*id.*, ¶ 9), and that based on a "personal relationship," Wenner "sanctioned" Defendant Karns' alleged false police report (*id.*, ¶¶ 100-101). This claim is construed as an attempt to allege supervisory liability against Defendant Wenner for the actions of Defendant Karns. The claim fails.

Again, "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). For Chief Wenner, although Plaintiff claims that Wenner was the final decisionmaker for the police department, he does not provide any factual substance to support that conclusory allegation. A supervisor, such as a chief of police, may be held liable under § 1983 if that supervisor was "involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir.2009). That Defendant Karns allegedly arrested Mr. Deemer based on a false report does not automatically impute liability for those failures to the police chief, absent some basic factual basis for the chief's personal involvement. Here, the Complaint lacks any specific allegations implicating Defendant Wenner personally. Accordingly, the claims against Defendant Wenner will be dismissed.

**Claims Against Defendant City of Oil City and Oil City Police Department**

Next, at Count III, the Complaint alleges a claim of supervisory liability related to the alleged violations of Mr. Deemer's Fourth Amendment rights. *See* ECF No. 1, ¶¶ 159-168. Specifically, the Complaint alleges that the City and the Police Department "directed officers and

the Defendant Officers sub judice to falsify incident reports or knew/should have known their policy or practice with regard to such would lead to falsified reports and a violation of Plaintiff's rights." *Id.*, ¶ 162. At the outset, the claim against Defendant Oil City Police Department will be dismissed. Police Departments cannot be sued in conjunction with municipalities because "police departments are administrative arms of local municipalities, not separate entities." *Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir. 2004). *See Chandler v. Sharon PD*, 2021 WL 753043, at *1 (W.D. Pa. Feb. 26, 2021).

The claim against the City of Oil City will likewise be dismissed. To the extent that Mr. Deemer wishes to hold the City liable under Section 1983, his Complaint must allege facts that plausibly establish that an official policy, practice, or custom of the City was the "moving force" behind the alleged violations of his constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-390 (1989); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Specifically, to state a claim, the Complaint must

> (1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights.

*Board of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Here, Mr. Deemer's allegations fall short.

As noted above, the Complaint alleges that Defendants involved in the New Year's Day incident "received instructions/directions from a supervisory official and that this conduct, in part, led to the violation of Plaintiff's rights." ECF No. 1, ¶ 160. It is also alleged that the City "directed officers and the Defendant Officers … to falsify incident reports or knew/should have known their policy or practice with regard to such would lead to falsified reports and a violation

10

of Plaintiff's rights." *Id*., ¶ 162. Finally, Mr. Deemer alleges that the City "acquiesced in the violation and/or maintained a policy, practice, or custom which directly caused" a violation of his rights. *Id*., ¶ 163.

While the Complaint does allege that the City "directed officers … to falsify incident reports," it does not identify the specific City policy, edict, or directive mandating officers to file false police reports. Instead, the Complaint only alleges a single instance of an arrest based on a false report which is insufficient to state a claim of municipal liability. *See, e.g., Donahue v. City of Hazleton*, 2020 WL 4445988, at *8 (M.D. Pa. Aug. 3, 2020). What the Complaint does allege then are rather vague and conclusory allegations of a City policy, practice, or custom concerning the filing of an allegedly false police report in his case. Such "conclusory and general" averments are "insufficient" and "fail[ ] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." *Wood v. Williams*, 568 Fed. Appx 100, 102-04 (3d Cir. 2014) *quoting McTernan v. City of York*, 564 F.3d 636, 658-59 (3d Cir. 2009) and affirming dismissal of *Monell* claim because plaintiff set forth series of conclusory allegations that "simply paraphrased" elements of *Monell* liability). Finally, to hold the City liable, Deemer's Complaint must also reference "the conduct, time, place, and persons responsible for any official municipal policy or custom endorsing the police officers' conduct." *Toms v. City of Allentown*, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) *citing Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). It does not. Accordingly, Mr. Deemer's attempt to hold the City of Oil City liable for the events of January 1, 2018, fails and the claims brought against the City will be dismissed.

11

**Inadequate Training or Supervision and Inadequate Screening**

The last two federal claims (at Counts IV and V) raised in the Complaint are against the City and the Police Department for their alleged failure to adequately train, supervise, and/or screen their employee officers. *See* ECF No. 1, ¶¶ 169-187. These claims will also be dismissed.

First, and as noted above, any claims against the Police Department will be dismissed because they cannot be sued in conjunction with municipalities because "police departments are administrative arms of local municipalities, not separate entities." *Padilla*, 110 Fed. Appx. at 278 (3d Cir. 2004).

As to his claims against the City alleging it failed to train, supervise, and/or properly screen its police officers, the Supreme Court has held that the failure to train may serve as a basis for municipal liability "only where [it] … amounts to deliberate indifference to the rights of persons with whim the police come into contact*." City of Canton*, 489 U.S. at 388. To sufficiently plead deliberate indifference, a plaintiff must establish that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," *Connick v. Thompson*, 563 U.S. 51, 62 (2011), but in rare cases deliberate indifference can be shown if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

Here again, the Complaint will be dismissed because Mr. Deemer simply parrots the legal standard for municipal liability under § 1983 without pleading sufficient supporting facts. *See, e.g., Aponte v. City of Philadelphia*, 2021 WL 816931, at *4 (E.D. Pa. Mar. 3, 2021). The Complaint alleges no facts that would support an inference that the City was on notice of a risk of police officers committing constitutional violations and deliberately ignored that risk. *See Wood v. Williams*, 568 Fed. Appx 100, 105 (3d Cir. 2014). In fact, it does not allege any facts about City police officer training or supervision at all. *See Freedman v. City of Allentown*, 853 F.2d 1111, 1117 (3d Cir. 1988) ("Mere conclusory allegations ... that the defendants deliberately elected not to train are not enough to support a constitutional claim."); *Cooper v. Chester*, 810 F. Supp. 618, 623 (E.D. Pa. 1992) (pleading insufficient where plaintiff alleged a city "as a matter of policy and practice, has, with deliberate indifference failed to adequately discipline, train or otherwise direct police officers concerning the rights of citizens, thereby causing the defendant officers in this case to engage in the unlawful conduct"); *McCall v. City of Phila.*, 396 F. Supp. 3d 549, 560 (E.D. Pa. 2019) (allegations devoid of specific factual support for assertions that City failed to train, supervise and discipline employees insufficient to plead deliberate indifference). Nor does Deemer's Complaint contain any allegations of prior misconduct caused by the allegedly inadequate supervision, training, or screening of the City's police officers.

As to the claim of inadequate screening of potential police officers (Count V), the Supreme Court has instructed that such a claim arises "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequences of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Bd. of Cnty. Comm'rs of Bryan County, Ok. v. Brown*, 520 U.S. 397, 411 (1997). Here, Mr. Deemer has identified nothing in the background of any of the

13

Defendant officers that should have lead the City to conclude that hiring them would deprive a citizen of constitutional rights. *See, e.g., Hicks v. Camden County,* 2017 WL 68620, at *4 (D.N.J. Jan. 6, 2017). Accordingly, both Counts IV and V will be dismissed.

### The Remaining State Law Claims

Having determined the Complaint fails to sufficiently allege any federal causes of action, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. These claims are an intentional infliction of emotional distress claim against Defendants Karns, Lawton, and Wenner (Count II) and a loss of consortium claim against all Defendants (Count VI).

"[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendant state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative jurisdiction for do so." *Chvala v. Harmony Fire District*, 2021 WL 3666479, at *6 (W.D. Pa. Aug. 18, 2021) *quoting Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). As no federal claim remains in this case, and because considerations of judicial economy, convenience, and fairness weigh in favor, the Court declines to exercise supplemental jurisdiction over Counts II and VI.

### Conclusion and Amendment

The claims against Defendant Oil City Police Department will be dismissed with prejudice as any attempt at amendment would be futile. However, it is conceivable that Mr. Deemer may be able to supplement his other claims with facts sufficient to overcome the

14

deficiencies noted herein. Therefore, the dismissal of his Complaint is without prejudice as to the claims against the remaining Defendants.

Because this is a civil rights case, the Court is required to extend Deemer an opportunity to amend his deficient pleading, irrespective of whether he has requested to do so and irrespective of whether he is counseled, unless it would be futile or inequitable.[2] Although it is unlikely that many of the deficiencies in the Complaint can be cured, the Court finds that under the circumstances Mr. Deemer should be afforded the chance to amend his pleading. When filing the Amended Complaint, Mr. Deemer, as a pro se litigant, must adhere to the following directives:

> Plaintiffs must indicate in separate Counts each constitutional right violated or state tort committed, indicating the specific Defendant(s) against whom that claim is asserted, and referencing in separately numbered paragraphs under each count, any factual statements showing that Plaintiffs are entitled to relief. Plaintiff must also include in each Count the specific relief sought against the Defendant(s) named in that Count.
> Moreover, the Court will not consider any arguments made by Plaintiffs in briefs in opposition about legal theories or allegations that have not been pled in accordance with the directives in the preceding sentence. In responding to the second amended complaint, Defendants may reassert any applicable arguments that they have raised in connection with the pending motions.

*Bracken v. Cty. of Allegheny*, 2017 WL 5593451, at *1–2 (W.D. Pa. Nov. 21, 2017), *aff'd*, 760 Fed. Appx 81 (3d Cir. 2019). Mr. Deemer will be afforded an additional fourteen days from

---

[2] The docket in this case reflects that Mr. Deemer was originally represented by Tyler S. Setcavage, Esq., who drafted and filed the instant Complaint on his behalf. *See* ECF No. 1, p. 26. Attorney Setcavage asked for leave to withdraw from this case given a disagreement with his client concerning his advice that Mr. Deemer should voluntarily dismiss this action and counsel's concern that he could be sanctioned by the Court for bringing this case in the first place. *See* ECF No. 25, ¶¶ 5-6. The Court granted counsel's motion (ECF No. 26) and this matter was administratively closed for a period of time while Mr. Deemer attempted to secure other representation. Having failed to do so, the case was reopened on January 5, 2021 (ECF No. 33) and Mr. Deemer is now proceeding pro se. Defendants' previously-filed Motion to Dismiss was reactivated on March 16, 2021.  ECF No. 36.

today to file an Amended Complaint. The failure to do so may result in the conversion of the without prejudice dismissal of his claims to one of dismissal with prejudice.

        An appropriate order follows this Memorandum Opinion.